# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

THE ESTATE OF ALFRED ALLEN, JR.,   *

v.   *   Civil Action No. CCB-13-3075

BALTIMORE COUNTY, MARYLAND   *

## MEMORANDUM

Now pending before the court is a motion for attorney's fees and expenses and request for hearing filed by the plaintiff, the estate of Alfred Allen, Jr. ("the estate"). Oral argument is not necessary to resolve the motion. *See* Local R. 105.6 (D. Md. 2018). For the reasons stated below, the court will grant the motion in part, awarding the estate attorney's fees in the amount of $158,181.40 and costs in the amount of $13,865, totaling $172,046.40.

## FACTUAL AND PROCEDURAL HISTORY

This case has an extensive factual and procedural history, and the court presumes familiarity with its prior opinions. *See* ECF 217; *Allen v. Balt. County, Md.*, 91 F. Supp. 3d 722 (D. Md. 2015). On January 11, 2011, Mr. Allen, then a corrections officer with Baltimore County's Department of Corrections, attended a medical examination as instructed by his employer. On February 16, 2011, the county notified Mr. Allen that he was being terminated as a correctional officer based upon the results of the medical examination. The county offered Mr. Allen the choice between a demotion to a civilian administrative position or discharge. Mr. Allen accepted the civilian position.

On October 15, 2013, the estate[1] filed its complaint against the county, alleging that the county had illegally required Mr. Allen to undergo a medical examination and illegally

---

[1] Unfortunately, Mr. Alfred Allen, Jr. passed away on August 14, 2017. His estate has been substituted as the plaintiff.

discharged/demoted Mr. Allen from his correctional officer position, both in violation of the Americans with Disabilities Act ("ADA"). Based upon the alleged violations, the estate requested back pay and other economic and compensatory damages, totaling $4.6 million in damages and fees. The county filed its answer on November 15, 2013, contesting both of the estate's claims. On June 18, 2014, during the pendency of the litigation, the county reinstated Mr. Allen as a correctional officer.

On March 18, 2015, the court granted in part and denied in part the county's motion for summary judgment, denying the estate's illegal examination claim and permitting its illegal discharge/demotion claim to proceed.

Beginning on August 3, 2015, the court held a jury trial on Mr. Allen's claims. On the sixth day, the court declared a mistrial after the jury could not agree on a verdict.

On December 2, 2016, the estate, with the county's consent, filed its amended complaint. The amended complaint removed all requests for economic and compensatory damages except for the estate's request for back pay for the period of Mr. Allen's discharge from the county. The parties agreed to have the court adjudicate the outstanding issue, and submitted their respective proposed findings of fact and conclusions of law on April 10, 2017.

On December 10, 2017, the court issued its memorandum and order, finding in favor of the estate and awarding it the stipulated amount of $32,871.59 in back pay. On February 2, 2018, the estate filed its motion for attorney's fees and expenses, requesting $387,647.50 in attorney's fees and $13,865.00 in expenses, totaling $401,512.50. Further, on April 16, 2018, the estate filed its reply to the county's opposition to the motion, to which it attached an affidavit from Ms. Cahill which stated that she had expended an additional 40.7 hours on this case, increasing the request for fees by an additional $20,350.00. ECF 230-5 at p. 2. The motion has been fully briefed and is

ripe for consideration.

## ANALYSIS

Pursuant to the ADA, successful plaintiffs are entitled to attorney's fees and expenses. 42 U.S.C. § 12205.[2] Such awards are within the court's discretion and must be reasonable. *Id.* A reasonable fee is "a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010) (internal citations omitted). In order "to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992).

It is the court's responsibility to determine what amount of attorney's fees is reasonable, in consideration of the specific facts of each case. *See Hensley*, 461 U.S. at 433. Leaving the question of attorney's fees to the district court's discretion is "appropriate in view of the district court's superior understanding of the litigation." *Id.* at 437. While the district court may award attorney's fees at its discretion, some guidelines for how to calculate such awards exist.

As a starting point, district courts should determine both the reasonable hourly rate for the attorney involved and the reasonable hours expended, commonly referred to as the lodestar figure. *Id.* at 433; *see also McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2014) (holding that district courts must first calculate the lodestar figure when awarding attorney's fees). Courts should consider the following twelve factors in evaluating the reasonableness of the lodestar figure:

(1) the time and labor expended;
(2) the novelty and difficulty of the questions raised;
(3) the skill required to properly perform the legal services rendered;
(4) the attorney's opportunity costs in pressing the instant litigation;
(5) the attorney's customary fee for like work;
(6) the attorney's expectations at the outset of the litigation;
(7) the time limitations imposed by the client or by circumstances;

---

[2] The ADA's fee provision is interpreted consistent with other civil rights fee provisions, including 42 U.S.C. § 1988. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, n.7 (1983); *Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 233 & n.3 (4th Cir. 2001).

3

(8) the amount in controversy and the results obtained;
(9) the experience, reputation and ability of the attorney;
(10) the undesirability of the case within the legal community in which the suit arose;
(11) the nature and length of the professional relationship between attorney and client; and
(12) attorneys' fees awards in similar cases.

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–20 (5th Cir. 1974) (adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 & n. 28 (4th Cir. 1978) and distinguished by *Blanchard v. Bergeron*, 489 U.S. 87, 91–93 (1989)); *McAfee*, 738 F.3d at 88.

"Next, the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Id.* "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Hensley*, 461 U.S. at 440. Claims are related if they arise out of a "common core of facts." *Id.* at 435. Finally, a plaintiff's degree of success achieved through litigation is a crucial consideration in determining the amount of attorney's fees to award. *Id.* at 435–36 (noting that "the most critical factor is the degree of success obtained"); *Farrar*, 506 U.S. at 114 (internal citations omitted). So, after the lodestar figure has been reduced to account for any unrelated claims, the degree of success should determine the percentage of the remaining amount to be awarded. *McAfee*, 738 F.3d at 88.

Here, the county agreed that the estate is the prevailing party with respect to the estate's request for back pay and that the estate thereby is entitled to an award of fees and costs related to that claim. The county argued, however, that the estate did not prevail on its illegal medical examination claim, and obtained no significant damages on its illegal discharge claim, which the county argued were unrelated to the estate's lost wages claim. The county therefore asserted that the estate should not be awarded any fees and costs associated with its unsuccessful claims, and instead should only be awarded those fees and costs associated with its request for back pay. The

4

county also challenged the hours Ms. Cahill billed as well as Ms. Cahill's requested hourly rate, and claimed that the application of the *Johnson* factors should result in a much lower award than requested by the estate. In sum, the county posited that the estate should be awarded no more than $65,743.18 in attorney's fees and $13,865.00 in costs, totaling $79,608.18.

The court disagrees with the county's assessment of the relatedness of the estate's claims. First, the lost wages request was one of the types of damages the estate requested due to Mr. Allen's discharge, such that the request for lost wages and the illegal discharge claim are not just related but are part and parcel of the same claim. Further, the estate's illegal medical examination and illegal discharge claims arose from the same set of facts surrounding Mr. Allen's discharge. The medical examination's results precipitated the county's decision either to demote or discharge Mr. Allen, and it was on this set of facts that the estate predicated its illegal discharge claim. Thus, the claims all arose from the same or closely related set of facts, and the estate's award cannot be reduced on that basis. The estate is entitled to reasonable attorney's fees and costs. The amount of such fees and costs are discussed below.[3]

### i. Hourly rate

Regarding a specific attorney's hourly billing rate, courts should compensate attorneys at the "prevailing market rates in the relevant community." *McAfee*, 738 F.3d at 91; *Depaoli v. Vacation Sales Assocs., LLC*, 489 F.3d 615, 622 (4th Cir. 2007) (internal citation and quotation omitted); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). "The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits." *Rum Creek*, 31 F.3d at 175 (citing *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313 (4th Cir. 1988)). A contingency

---

[3] The court has reviewed the case pursuant to all of the *Johnson* factors, but will discuss here only those factors relevant to the facts of this case that particularly affect the court's award of attorney's fees.

5

fee arrangement may justify a higher attorney's fees award. *See Blake v. Balt. Cnty.*, 12 F. Supp. 3d 771, 776 (D. Md. 2012) (noting that the "risk that an attorney takes when representing a client on a full contingency fee basis, which is often the case in employment discrimination cases, justifies a risk premium.").[4]

The court requires parties that intend to seek attorney's fees to submit to opposing counsel quarterly statements showing the hours billed and the value of those hours. Local R. Appx. B(1)(c) (D. Md. 2018). Additionally, with the assistance of a committee of local attorneys, the court has set forth a guideline hourly rate of $300-475 for attorneys admitted to the bar for twenty years or more, the highest level of experience for which the guideline accounts. Local. R. Appx. B(3) (D. Md. 2018). Courts may apply, at their discretion, hourly rates outside of this guideline. *See Stone v. Thompson*, 164 F. Supp. 2d 639, 640 (D. Md. 2001) (applying an outside-the-guidelines hourly rate in light of the plaintiff's counsel's extraordinary qualifications and the protracted history of the proceedings).

Ms. Cahill requested, at minimum, an hourly rate of $475 based upon her more than 35 years of experience and expertise in the fields of employment and civil rights law. Additionally, Ms. Cahill argued that an hourly rate of $500 would be reasonable here, given that $500 is her normal hourly rate for clients who do not require reduced rates, ECF 222 at ¶ 3, and considering the hourly rates of several partners at Baltimore firms with employment practices, whose rates can exceed the guideline rate by over $200. As a solo practitioner, Ms. Cahill specializes in employment and civil rights law. Ms. Cahill largely operates on a contingency-fee basis, as she did in the instant case. In support of her request for an hourly rate at or exceeding the guideline's limit, Ms. Cahill emphasized the complexity of the case, her preclusion of other employment

---

[4] *Blake* also involved the award of attorney's fees to Ms. Cahill, counsel for the plaintiff in this case, following a successful suit against Baltimore County.

opportunities while the case was pending, and the protracted nature of this litigation. Both parties noted Ms. Cahill's previous assignment of a $385 hourly rate in *Blake*, which was decided in 2012.

Here, the court finds that an hourly rate outside of the guideline is unwarranted. The legal issues involved in this case may have presented significant difficulties to an attorney unfamiliar with ADA litigation, but did not present any novel questions of law and only involved two legally cognizable claims, one of which was summarily denied. Additionally, Ms. Cahill claimed to have missed out on "opportunities that were important to her as a sole practitioner" due to her responsibilities for this case, but failed to identify with any specificity what opportunities she missed and what financial ramifications she endured as a result. ECF 221 at p. 13. Without more information, the court is unable to assign any value to these missed opportunities. In addition, as a solo practitioner, Ms. Cahill apparently does not delegate any of the work that otherwise could be performed by an associate or a paralegal at a lower rate, and instead performs all legal tasks and duties herself. Furthermore, while Ms. Cahill cited the protracted nature of these proceedings as another reason to assign her a high hourly rate, the court notes that both parties have engaged, at various times during the pendency of this case, in tactics that, while permissible, have contributed to the case's longevity. Finally, the court acknowledges that in 2012 Ms. Cahill was assigned an hourly rate of $385 in a case that also involved a claim that the county had subjected an employee to an illegal medical examination under the ADA. *Blake*, 12 F. Supp. 3d at 777.

Two factors, however, prompt the court to assign Ms. Cahill a higher hourly rate than the county's $385 suggestion, albeit one within the guideline. First, Ms. Cahill's assumption of this case on a contingency fee basis works to her credit, given the precarious but often necessary nature of the contingency fee arrangement. *See Blake*, 12 F. Supp. 3d at 776. Second, of course, hourly rates have increased over time, and this award is being made some years after *Blake*. Considering

all of the relevant factors, the court will assign Ms. Cahill an hourly rate of $415 for the purposes of calculating the lodestar.

### ii. Hours billed

The estate requested credit for 856.8 hours billed in this case. The county argued that the estate should be awarded only enough fees to constitute double the amount of the back pay award in this case, $65,743.18, which would credit the estate with approximately 171 hours at the county's suggested hourly rate of $385. The estate's lack of success on allegedly unrelated claims as well as the estate's overall limited success both indicate, according to the county, that the estate's credited hours should be significantly truncated.[5]

As noted *supra*, the court does not accept the county's argument that the estate advanced unsuccessful claims unrelated to its request for back wages, and that the court therefore should redline all hours billed for the unsuccessful claims from the lodestar calculation. The estate's claims were sufficiently interrelated that no deduction will be made despite the illegal medical examination claim's lack of success.

The court, however, will reduce by half the number of hours Ms. Cahill billed to prepare and present the first trial which resulted in a hung jury. Ms. Cahill asserted that she exerted 303.2 hours preparing for and presenting the first trial. The jury did not find in favor of the estate, and this result does not constitute a success on the part of the estate. The first trial, however, produced a record and a transcript that the court used in reaching its decision to award the estate Mr. Allen's

---

[5] Additionally, the county argued that the discrepancy of 148.7 hours between the claimed hours billed in Ms. Cahill's quarterly fee statements and the claimed hours in the fee petition justified a parallel reduction of 148.7 hours. The estate justified the discrepancy in two ways: 1) the county's argument did not include hours Ms. Cahill billed in 2017 and 2018, and 2) the hours calculated for the various fee statements were estimates rather than exact figures. The court is satisfied with the estate's first justification, given that Ms. Cahill billed approximately 145.5 hours in 2017, a period not included in the county's calculations, only 3.2 hours less than the 148.7-hour discrepancy the county highlighted.

8

lost wages in the second trial, and the estate should be credited for this benefit that the first trial conferred. As a result, the estate will be credited 151.6 hours for the first trial rather than the full 303.2 hours.[6]

Accordingly, based on a total of 705.2 hours at a $415 hourly rate, the lodestar amount is calculated to be $292,658.00. An additional amount of $13,865.00 in expenses is not contested.

### iii. Reduction of lodestar figure

Having applied *Hensley*'s lodestar method and the relevant *Johnson* factors, the court now turns to the question of what percentage of the lodestar amount should be awarded to the estate based upon its degree of success. *See McAfee*, 738 F.3d at 88. As explained below, given the estate's very limited success on its claims and balancing the fact that Ms. Cahill assumed this case on a contingency fee basis against the fact that the award will derive from public coffers, the court will award the estate $158,181.40 and costs in the amount of $13,865, totaling $172,046.40.

The estate unquestionably is the prevailing party in this case. That status, while entitling the estate to attorney's fees, belies the limited nature of the estate's success. As the county notes, the estate initially requested $4.6 million in economic and compensatory damages and fees in its original complaint and ultimately was awarded $32,871.59 in back pay. The court acknowledges that initial damages requests regularly exceed in great measure the final judgment, and that such a divergence in request versus result is not unusual and normally would not preclude a sizeable attorney's fee award. That is not, however, the only factor present here. After one of the estate's two claims was denied in summary judgment, the estate then took the remaining claim of illegal discharge to trial, maintaining its request for economic and compensatory damages without success, all notwithstanding the fact that Mr. Allen had been reinstated much earlier in the

---

[6] For the computations found throughout this opinion, the court calculated the hours Ms. Cahill expended in this matter by totaling the time records attached to the estate's motion. ECF 222-1.

9

litigation. Following the mistrial, the estate elected, with the county's consent, to remove all of its claims for damages except for its request for back pay, on which it prevailed. This significant shift permitted the estate to proceed in this case without risking another jury trial and another failure. The basis of the court's conclusion that the estate's limited success warrants a similarly limited attorney's fees award lies not in the difference between the amount of damages requested compared to the amount awarded, but in the estate's eleventh-hour adjustment of its request at the expense of much of the substance of its claims.

The source of the attorney's fees also factors into the court's consideration of the attorney's fees award. "When attorneys' fees are being paid out of public funds, courts 'have a special responsibility to ensure that taxpayers are required to reimburse prevailing parties for only those fees and expenses actually needed to achieve the favorable result.'" *Blake*, 12 F.Supp.3d at 774 (citing *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 975 (D.C.Cir. 2004)).

Further, the court notes that the estate already had achieved most of Mr. Allen's goals in this case on June 18, 2014, when the county reinstated Mr. Allen to his original position. *See* ECF 230-2 at ¶ 3 (regarding the benefits enjoyed by Mr. Allen and his family due to his reinstatement during the pendency of this case). This reinstatement occurred after the initiation of this case but nearly four months *prior* to the county's filing of its motion for summary judgment, and included reinstatement of Mr. Allen's prior salary scale, pension benefits, and seniority. Whether Mr. Allen's reinstatement was a "voluntary" correction on the county's behalf or the result of the litigation is not determinative, as the point of the litigation was to restore Mr. Allen to his position and status, relief that he reasonably was seeking through June 18, 2014. As a result, the court will award the estate full credit for the hours Ms. Cahill expended through June 2014.

The lodestar figure for the period after Mr. Allen's reinstatement, however, will be reduced

significantly due to the limited degree of success the estate thereafter enjoyed. After Mr. Allen's reinstatement, the court summarily denied the estate's illegal medical examination claim. ECF 81, 82. The estate nonetheless continued to litigate the case, seeking significant compensatory damages and back pay. The estate was not successful at trial, and ultimately had to whittle its claims down to only its request for back pay by amending its complaint more than three years after its initial filing. The court granted the estate's back pay claim. ECF 216, 217. This result, while overall a victory for the estate, signifies a limited success when viewed in totality over the course of this litigation, especially considering the estate's eleventh-hour abandonment of its request for substantial compensatory damages. Therefore, a significant reduction of the hours spent after Mr. Allen's reinstatement is a reasonable way to account for the estate's limited degree of success. Accordingly, the court will credit the estate fully for the hours Ms. Cahill expended from the case's initiation through June 18, 2014, resulting in 164.6 hours and totaling $68,309.00 in attorney's fees. The lodestar amount for the period after June 18, 2014 totaled $224,681.00, but the court will award the estate only 40% of this amount, given the limited success, for a total of $89,872.40. Combining the lodestar amounts for the periods before and after Mr. Allen's reinstatement, the reduced lodestar amount to be awarded to the estate is $158,181.40.

## CONCLUSION

For the reasons stated above, the court will grant the motion in part and will award the estate attorney's fees in the amount of $158,181.40 and costs in the amount of $13,865.00, totaling $172,046.40. A separate order follows.

_3/28/19_
Date

_CCB_
Catherine C. Blake
United States District Judge

11